ROBERT WALKER *et al. v.* ANNIE WALKER *et al.*
SAME *v.* THOS. N. BUSSEY *et ux.*

(*Nashville.* December Term, 1917.)

1. SUBROGATION. Right to subrogation. Voluntary payment. Mistake.

A widow whose husband died intestate and without children in Georgia, thus under the Georgia laws leaving her his sole heir at law and entitled to inherit his real estate, paid purchase-money notes which were a lien on real estate acquired by the husband in the State of Tennessee. The widow made such payment under a mistake as to the law of Tennessee, deeming that she inherited such land and intending to discharge the lien upon her property. *Held* that, while one who pays a debt with no intention at the time of keeping it alive, or being subrogated to the rights of the creditors, is a volunteer, not entitled to subrogation, yet, as the doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it, the widow is entitled to be subrogated to the lien of such purchase-money notes; for her mistake as to the laws of Tennessee, a foreign State, was a mistake of fact against which equity will relieve. (*Post, pp.* 681-685.)

Cases cited and approved: Belcher v. Wickersham, 68 Tenn., 111; Russell v. Finney, 3 Shan. Cas., 258; Motley v. Harris, 69 Tenn., 577; Bridges v. Cooper, 98 Tenn., 381; Deposit Co. v. Long, 195 S. W., 766; Capen v. Garrison, 193 Mo., 335; Osincup v. Henthorn, 89 Kan., 58; Male v. Roberts, 3 Esq., 163; Kenny v. Clarkson, 1 Johns. (N. Y.), 385; Frith v. Sprague, 14 Mass., 455; Consequa v. Willings, 1 Pet. C. C., 229; Raynham v. Canton, 3 Pick. (Mass.), 293.

Cases cited and distinguished: Haven v. Foster, 9 Pick. (Mass.), 112; King v. Doolittle, 38 Tenn., 85.

2. **EQUITY.** "Mistake of fact." "Mistake of law." Relief.

A mistake as to the laws of a foreign State is a mistake of fact, and not of law, against which equity will relieve. (*Post, pp.* 681-685.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Jos. R. WEST, Special Chancellor.

JORDAN STOKES, SR., for complainant.

W. E. NOWELL, JR., for defendants.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The question presented upon this appeal, and to be dealt with in this opinion, is the right of Mrs. Bussey to be subrogated to certain liens upon a tract of land in Davidson county represented by purchase-money notes which she paid off under a mistake as to her rights in the land.

Her first husband, C. E. Walker, died in the State of Georgia intestate and without children, leaving the widow alone surviving him. He also left surviving him his father and certain brothers and sisters. Prior to his death he bought the land involved from his father and executed certain notes to his father and mother equally in payment of the balance of the purchase price. The notes held by the father at the time

of his death amounted to $1,317.31, and were a lien upon the land. After the death of her husband, the widow intermarried with Bussey.

Under the laws of Georgia Mrs. Bussey was the only heir at law of her husband, and as such inherited his real estate. Such is the statute of Georgia, and she was so advised. Believing that she was the owner of the land in Tennessee, she paid off the notes held by her husband's. father, Robert Walker. At the time of the payment she intended to fully discharge the debt, and did not intend to keep it alive for her benefit. She thought it was a lien upon her land, and that she was protecting her rights under the law. In this, of course, she was mistaken, as her only interest in the real estate in Tennessee was that of dower. The question for our decision is whether Mrs. Bussey is entitled to substitution for the lien represented by the notes held by Robert Walker, to whom she paid the money.

It is well settled that one who pays a debt with no intention at the time of keeping it alive, or being subrogated to the rights of the creditors and as a volunteer, is not entitled to subrogation. This general statement, however, is subject to many modifications. In so far as it embodies the principle that courts of equity will not grant relief unless payment was made upon some well-recognized principle of equity, it will harmonize with most of the cases. It is probable that all that is meant by the general rule is that, if a volunteer pays the debt of a third party, although it is

a lien upon property, with the intention of extinguishing the debt, and is not induced thereto by fraud, accident, or mistake, or by contract with the payee, he is not entitled to subrogation. *Belcher* v. *Wickersham,* 9 Baxt., 111; *Russell* v. *Finney,* 3 Shan. Cas., 258; *Motley* v. *Harris,* 1 Lea, 577; *Bridges* v. *Cooper,* 98 Tenn., 381, 39 S. W. 720.

The doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it. 37 Cyc., 366; *Deposit Co.* v. *Long,* 195 S. W., 766; Pom. Eq. Jur., vol. 6, pp. 1492-1501; *Capen* v. *Garrison,* 193 Mo., 335, 92 S. W., 368, 5 L. R. A. (N. S.), 838, and the very able annotator's note.

Mistake of fact is ground of equitable relief against payment of a debt of another so as to entitle the one who pays it through mistake to be subrogated to the rights of the payee. Mrs. Bussey made the payments under consideration through mistake of her rights under the laws of Tennessee. She thought, and had been so advised by counsel, that her rights were the same under the laws of Tennessee that they were under the laws of Georgia. Under the Georgia statute she was entitled to the real estate of her husband as his heir. This was a mistake of fact against which a court of equity will grant relief. It has been often held that a mistake of a nonresident as to the State of the law of the forum is a mistake of fact, and not of law. *Osincup* v. *Henthorn,* 89 Kan., 58, 130 Pac. 652, 46 L. R. A. (N. S.), 174, Ann. Cas. 1914C, 1262.

The annotator of the foregoing case states that *Haven* v. *Foster,* 9 Pick. (Mass.), 112, 19 Am. Dec., 353, decided in 1829, is the parent case upon this sbuject. In that case the court said:

"The misapprehension or ignorance of the parties to this suit related to a statute of the State of New York. Is this, in the present question, to be considered fact or law? The existence of any foreign law must be proved by evidence showing what it is. And there is no legal presumption that the law of a foreign State is the same as it is here. 2 Starkie, Ev. (Metcalf's Ed.) 568; *Male* v. *Roberts,* 3. Esq., 163 (6 Revised Rep., 823). If a foreign law is unwritten, it may be proved by parol evidence; but, if written, it must be proved by documentary evidence. *Kenny* v. *Clarkson,* 1 Johns. [N. Y.], 385 (3 Am. Dec., 336); *Frith* v. *Sprague,* 14 Mass., 455; *Consequa* v. *Willings,* 1 Pet. C. C., 229, Fed. Cas., No. 3,128. The laws of other States in the Union are in these respects foreign laws. *Raynham* v. *Canton,* 3 Pick. [Mass.], 293. The courts of this State are not presumed to know the laws of other States or foreign nations, nor can they take judicial cognizance of them, till they are legally proved before them. But when established by legal proof, they are to be construed by the same rules, and to have the same effect upon all subjects coming within their operation, as the laws of this State. That the *lex loci rei sitae* must govern the descent of real estate is a principle of our law, with which every one is presumed to be acquainted. But

what the *lex loci* is the court can only learn from proof adduced before them. The parties knew, in fact, that the intestate died seised of estate situated in the State of New York. They must be presumed to know that the distribution of that estate must be governed by the laws of New York. But are they bound, on their peril, to know what the provisions of these laws are? If the judicial tribunals are not presumed to know, why should private citizens be? If they are to be made known to the court by proof, like other facts, why should not ignorance of them by private individuals have the same effect upon their acts as ignorance of other facts? '*Juris ignorantia est, cum jus nostrum ignoramus,*' and does not extend to foreign laws or the statutes of other States. We are of opinion, that, in relation to the question now before us, the statute of New York is to be considered as a fact, the ignorance of which may be ground of reparation.

The doctrine of this case is followed in many cases cited in the note just referred to. It is cited with approval in our own case of *King* v. *Doolittle,* 1 Head, 85, in which it is said:

"All the authorities concur that ignorance of foreign law is deemed to be ignorance of fact, because no person is presumed to know the foreign law; and it must be proved as a fact. 1 Story's Eq. Jur., section 140, and note 3. And in this view, it has been held, and we think correctly, that the laws of the other

Walker   v.   Walker.

States of the Union are to be regarded as foreign laws.''

The court of civil appeals and the chancellor were both of opinion that Mrs. Bussey was entitled to the subrogation, and we deny the petition for writ of *certiorari.*