MERCHANTS' BANK & TRUST CO. *v.* HERBERT BUSHNELL.

(*Nashville.* December Term, 1919.)

1. **BILLS AND NOTES.** Accommodation maker signing as "surety" Primarily liable.

In view of the Negotiable Instrument Act, an accommodation maker was primarily liable upon a note, even though he signed the word "surety" opposite his name. (*Post, pp.* 277, 278.)

Acts cited and construed: Acts 1899, ch. 94.

Case cited and approved: Graham v. Shephard, 136 Tenn., 418.

2. **PRINCIPAL AND SURETY.** Accommodation maker not entitled to have money collected under a mortgage of accommodated party applied on note.

An accommodation maker of a note was not entitled to have paid on the note, rather than on other indebtedness of accommodated maker, money collected by the payee under a mortgage executed by the accommodated maker to the payee to secure the loan represented by the note and other indebtedness; the accommodation maker not being a party to the mortgage and the mortgage stipulating that its security might be applied to other indebtedness from the accommodated maker to the payee. (*Post, pp.* 278, 279.)

3. **SUBROGATION.** Arises only in favor of one who pays debt of another and not in favor of accommodation maker of note.

The doctrine of subrogation arises only in favor of one who pays the debt of another, and not in favor of an accommodation maker of a note who pays the debt in performance of his own covenants; such right never following a primary liability. (*Post, p.* 279.)

Case cited and approved: Spire v. Spire, 104 Kan., 501.

---

**FROM HAMILTON.**

---

*On right of accommodation party who is obliged to pay bill or note, to recover from the accommodated party, see note in 37 L. R. A. (N. S.), 783.

Appeal from the Chancery Court of Hamilton County. —Hon. W. B. Garvin, Chancellor.

John B. Hyde, for plaintiff.

Sizer, Chambliss & Chambliss, for defendant.

Mr. Chief Justice Lansden delivered the opinion of the Court.

This bill was filed by the bank to recover of the defendant, Bushnell, the sum of $1,500, upon the following facts: A. B. Guy and H. Bushnell executed a note to complainant on December 8, 1916, for the sum of $1,500, which stipulated, among other things, that the bank might apply all securities at the maturity of the note, or otherwise, on deposit for its payment "to the payment of this note on any other indebtedness due said bank by said parties, or any of them." Otherwise the note was an ordinary note which Bushnell signed, and placed after his name "surety." On December 14, 1916, six days later, Guy executed a mortgage to the complainant, reciting that he is indebted to the bank in the sum of $1,500 by a promisory note, and was anxious to secure the payment of the indebtedness at its maturity, "as well as any other indebtedness to said bank, represented by open account, overdraft or otherwise, not exceeding two thousand dollars at any one time." This mortgage also stipulates that Guy will keep the property insured for not less than the amount of the debt with the loss value clause in favor of the bank. On December 21, 1916, Guy executed another note to the bank for

$500 for which no security seems to have been given, and on the same day he also executed a note for $1,700, and executed a deed of trust to secure the same. After the excution of these notes the property covered by the mortgage of December 14, 1916, was destroyed by fire, and the bank collected the insurance thereon to the net amount of $1,723.35. It foreclosed the deed of trust given to secure the $1,700 note, and realized therefrom the sum of $125.70, which was applied as a credit on the $1,700 note. It applied the proceeds of the insurance policy to the payment of the $1,700 note, less $125.70.

The mortgage from which the proceeds of the insurance policy was derived was executed by Guy to the bank for the purpose of securing the $1,500 note, and such other indebtedness as Guy should owe the bank. This is undoubtedly true by the terms of the instruments themselves. The defendant insists that he is entitled to compel the bank to apply the proceeds of these policies to the payment of the note which he signed. Therefore the question to be decided is whether the bank has the right to apply the proceeds of these policies to other indebtedness of Guy, and hold Bushnell to his liability upon the $1,500 note. If the bank has not such right, Bushnell's liability is very small, and the bank would be forced to look to Guy alone for the payment of its debt. If it has such right, its judgment against Bushnell will cover the balance of its indebtedness against Guy.

We think it cannot affect the liability of Bushnell, because he signed the word "surety" opposite his name

when he signed the note.  He was an accommodation maker, and by the express terms of the Negotiable Instrument Act (Laws 1899, chapter 94) he was primarily liable.  *Graham* v. *Shephard,* 136 Tenn., 418, 189 S. W., 867, Ann. Cas., 1918E, 804.

The mortgage of December 14, 1916, cannot affect the liability of Bushnell, because it is a contract between the bank and Guy.  There is nothing in the record to show that Bushnell was let into the contract in any way.  The subsequent mortgage to the $1,700 note was likewise a contract between Guy and the bank.  All these instruments stipulated that the security therein provided might be applied to other indebtedness of Guy at the bank's discretion.

It is supposed by counsel for defendant that the fact that Guy executed the first mortgage to secure the payment of the $1,500 note, signed by Bushnell, gives Bushnell the right to have the proceeds of that mortgage applied to the payment of the note which he signed.  His claim of right to it was based entirely upon the facts stated.  There is nothing in the record to show an agreement upon the part of the bank and Guy to such an arrangement.  We do not know of any principle of law or equity which confers upon Bushnell such right, and no authority is cited upon the brief.  Bushnell, as joint maker, is bound absolutely to pay the note by the act of signing it, and no subsequent agreement with him is shown to bind the bank to modify his obligation.

The contract between Guy and the bank, evidenced by the first mortgage, cannot inure to the benefit of Bushnell, because the mortgage stipulates that its security

may be applied to other indebtedness from Guy to the bank. We are not speaking of the relationship between Bushnell and Guy, the comakers of the note. We think Bushnell is primarily liable upon the note, and the mortgage between Guy and the bank did not seek to modify this obligation.

Bushnell has no right of subrogation. He has not in fact paid the note, and if it should be treated as having been paid by him, and his rights arising from such payment should be considered as arising upon the facts of the case, he is not in a position to invoke the doctrine of subrogation, because the debt is not a debt of another. The doctrine of subrogation arises only in favor of one who pays the debt of another, and not in favor of one who pays the debt in performance of his own covenants. This right never follows a primary liability. 37 Cyc., 374, and the cases there cited. *Spire* v. *Spire,* 104 Kan., 501 180 Pac., 209. The doctrine is so well understood that we forbear to cite further authorities.

It results that the decree of the chancellor is reversed, and a decree will be entered here in accordance with this opinion.